# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA BELL,                :
                                  :
                Plaintiff,     :
     v.                    :     Civil Action No. 16-02403 (RC)
                                    :
DEPARTMENT OF DEFENSE,  :
                                  :
                Defendant.    :

## <u>MEMORANDUM OPINION</u>

This matter is before the court on defendant's motion to dismiss ("Def.'s Mot.") [ECF No. 9]. In addition to plaintiff's opposition [ECF No. 26] (with a concomitant request for leave to amend), supplemental opposition[1] ("Supp. Opp.") [ECF No. 27] to the motion to dismiss, plaintiff has also filed a motion for reconsideration of stay ("Mot. for Recon.") [ECF No. 23], and a motion to clarify ("Mot. to Cl.") [ECF No. 25]. Plaintiff has also filed a self-described "*ex parte*" letter ("Ex P. Let.") [ECF No. 28] requesting certain accommodations. Lastly, plaintiff has filed another motion to stay and hold in abeyance ("Sec. Mot. to Stay") [ECF No. 33]. For the reasons stated herein, defendant's motion to dismiss is granted and plaintiff's motions are denied.

## FACTUAL BACKGROUND

Plaintiff, proceeding *pro se*, has filed suit against her former employer, the U.S. Department of Defense ("DOD"). Complaint ("Compl.") at caption. The complaint contains claims for "constructive suspension" under the Civil Service Reform Act ("CSRA") of 1978, race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e–

---

[1] For the purposes of this opinion, the court will cite only to the supplemental opposition, as it contains all of the original argument from plaintiff's first opposition, as well as any additional.

16), and disability discrimination under the Rehabilitation Act of 1973 (as amended, 29 U.S.C. § 701, *et seq.*) and the Americans with Disabilities Amendments Act of 2008 (42 U.S.C. 126 § 12101, *et seq.*). Compl. at 1 ¶ 1. Plaintiff originally brought claims of age discrimination, however, she has requested to voluntarily dismiss those claims without prejudice, which the court will allow. Supp. Opp. at 3 ¶ 2. Lastly, plaintiff broadly alleges infringement of her due process rights, as well as a conflation of violations of the Privacy Act (5 U.S.C. § 552a) relevant to HIPPA violations.[2] Compl. at 1 ¶ 1.

Plaintiff alleges that defendant discriminated against her based on her race and disabilities by denying her certain accommodations, principally the right to exclusively telework. *Id.* at 6-19; Def.'s Mot. at 6 ¶ 2. Plaintiff alleges that she had been teleworking from home since early 2010 with no issues and that defendant began denying her renewed requests without adequate basis. Compl. at 6 ¶ 1. She believes that she has been retaliated against and denied her accommodations because she filed various administrative grievances. *Id.* at 1 ¶ 1, 2 ¶ 1, 5 ¶ 3; Supp. Opp. at 6 ¶ 4; 7 ¶ 1.

As a result of the purported intentional denial of disability accommodations for full-time telework, plaintiff alleges that she has been unable to work at all and was therefore "constructively suspended." Compl. at 2 ¶ 1; Supp. Opp. at 2 ¶ 3, 3 ¶ 4. She seeks backpay for unpaid leave she believes she was forced to take from 2012 onward, as well as other miscellaneous monetary compensation. Compl. at 22–23. As a result of the alleged constructive suspension, plaintiff states

---

[2] Plaintiff also makes passing reference to the False Claims Act and evidence spoliation. Compl. at 1 ¶ 1, 5 ¶ 3. Aside from listing these claims in introductory paragraphs of her complaint, plaintiff provides no further facts or legal bases relating thereto. No additional information is provided in plaintiff's subsequent filings to support these causes of action. Therefore, these allegations are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)). Additionally, it is well established that in False Claims Act cases, "*pro se* parties may not pursue [*qui tam*] actions . . ." *Walker v. Nationstar Mortg. LLC*, 142 F. Supp. 3d 63, 65 (D.D.C. 2015) (quoting *U.S. ex rel. Fisher v. Network Software Assocs.*, 377 F. Supp. 2d 195, 196–97 (D.D.C. 2005); *Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 170 (D.D.C. 2015) (noting that "courts in this jurisdiction consistently have held that *pro se* plaintiffs . . . are not adequately able to represent the interests of the United States.") (citing cases); 31 U.S.C. §§ 3729–3732.

that defendant intentionally refused to pay her for hours worked from 2012 through 2014.  *Id.*  She also requests correction of her personnel records.  *Id*. at 22 ¶ 4.  On February 6, 2015, plaintiff was removed from her job in federal service for being absent without leave ("AWOL") for an extended period of time.  Def.'s Mot. at 10 ¶ 2.  This case has been pending for nearly two years, and until just recently, plaintiff had expressly stated that she does not seek to litigate her removal as part of this case.  Supp. Opp. at 6 ¶ 1; Sec. Mot. to Stay.

<u>Procedural and Factual History</u>

Plaintiff has filed several prior complaints with the Equal Opportunity ("EEO") office, the Merit Systems Protection Board ("MSPB") and with the United States District Court for the Eastern District of Virginia ("Eastern District of Virginia" & "Eastern District").  *See* MSPB, Washington Regional Office, Initial Decision (July 8, 2016) ("Def.'s Ex. 4"); *see also* Mot. Hrg. Tr., *Bell v. Dept. of Defense,* No. 14-cv-470 (E.D. Va. Oct. 24, 2014) ("Def.'s Ex. 12"); Order, *Bell v. Dept. of Defense*, No. 14-cv-470) (E.D. Va. Oct. 24, 2014) (ECF No. 59) ("Def.'s Ex. 13").  The opinions issued in the first direct MSPB appeal and in the matter filed before the Eastern District of Virginia both contain painstakingly detailed accounts of the factual background of plaintiff's claims which, in addition to the information provided by the parties herein, the Court has closely reviewed.  *See id.*  Therefore, this court will provide a more abbreviated account of the relevant factual background.

Plaintiff is a former employee of DOD.  Compl. 1 ¶¶ 1, 3.  She began her employment on November 21, 2009 as a GS-14 Program Analyst with the Defense Travel System ("DTS"), within the Business Transformation Agency.  *Id.*  As part of her job responsibilities, she inspected completed work from government contractors, which sometimes included in-person meetings and travel.  Def.'s Ex. 4 at 3 ¶ 1.  She also acted as a technical representative for contract administration

and represented defendant in meetings concerning technical issues. *Id.* She began working with the DOD's Defense Logistics Agency ("DLA") in July 2011 after DTS was absorbed by DLA. *Id.*; Compl. at 1 ¶ 3.

On December 7, 2009, plaintiff first requested permission to telework twice per week to care for her dependent adult sister. Def.'s Ex. 12 at 22–23. Defendant granted the request on December 14, 2009. *Id.* In June 2011, plaintiff indicates that she was granted voluntary leave for an undetermined period of time. *Id.* at 23.

On January 21, 2011, plaintiff submitted another request to telework twice a week. This time, her basis was medical in nature. Additionally, she stated that surrounding office noises caused her anxiety. This request was approved by defendant on January 24, 2011, again allowing her to telework twice per week. On August 31, 2011, she received an updated telework agreement, still allowing her to telework twice a week. However, the agreement stipulated that telework would be terminated if it adversely affected plaintiff's job performance. The agreement also provided that defendant could require plaintiff to work in-office at any time if project needs required it. *Id.*

On November 25, 2011, plaintiff requested that she be permitted to increase her telework five days per week. Def.'s Ex. 12 at 23; Compl. at 6 ¶ 3. On January 5, 2012, defendant responded by offering four days per week, rather than the requested five. Def.'s Ex. 12 at 24. The telework agreement was set to run from November 2011 through December 2012. *Id.*

In February 2012, plaintiff received a successful performance evaluation for the year 2011. Def.'s Ex. 12 at 24. Of course, in 2011, plaintiff was primarily teleworking only two days per week, and was in-office three days per week. In March 2012, concerns began to arise regarding plaintiff's performance. Meetings were held in this regard. *Id.* Shortly thereafter, plaintiff notified

defendant that she did not feel safe at work, primarily due to coworkers near her work station. An investigation was held, and no safety issues were found. Nonetheless, defendant offered five different alternative work stations, all of which plaintiff rejected. Def.'s Ex. 12 at 24; Compl. at 6 ¶ 3. Plaintiff disagrees that defendant attempted to move her. Compl. at 8–10. Plaintiff also alleges that defendant's EEO office failed to respond to several complaints. *Id.*

In the summer and early fall of 2012, plaintiff began submitting medical notes regarding her claimed conditions and requests for additional telework. Def.'s Ex. 12 at 25–6. According to defendant, these notes were insufficient and often contained contradictory information regarding plaintiff's ability to work and the accommodation she required. *Id.* Plaintiff disagrees that the medical notes were insufficient. Compl. at 11. Plaintiff was also placed on intermittent leave during this time period due to illness. Def.'s Ex. 12 at 25-6. In October 2012, plaintiff returned to work in a limited duty capacity, working approximately 20 hours per week from home. Def.'s Ex. 12 at 26 ¶ 5; Compl. at 9 ¶ 12.

In December 2012, plaintiff requested the renewal of her agreement to telework four days per week. Def.'s Ex. 12 at 27 ¶ 3; Compl. at 11 ¶ 24. Defendant informed plaintiff that it would not renew the agreement without sufficient documentation from her medical providers. Def.'s Ex. 12 at 27 ¶ 4. Again, plaintiff disagrees that the information submitted was insufficient. Compl. at 11-12. This cycle continued; plaintiff sporadically provided additional medical notes, and defendant continually responded requesting additional information. Def.'s Ex. 12 at 27; Compl. at 12. Plaintiff admits that she was hesitant to provide additional medical information because of her concerns for personal privacy. Compl. at 11 ¶ 22.

The then-existing telework agreement expired on December 18, 2012. Def.'s Ex. 12 at 27 ¶ 4, 28 ¶ 1. In January 2013, plaintiff requested additional paid leave because she was sick and

unable to work. Def.'s Ex. 12 at 27 ¶ 2; Compl. at 10–11. On January 9, 2013, plaintiff was assessed for performance review for the 2012 calendar year. Def.'s Ex. 12 at 28–30; Compl. at 12 ¶ 29. She was given a successful rating; however, it was noted that her performance had been deteriorating since October 2012. Def.'s Ex. 12 at 28–30. Defendant continued to request additional information regarding plaintiff's requests for additional leave and/or telework. *Id.* at 30. Plaintiff agrees with these stated facts, though she takes issue with defendant's need for additional medical information. Compl. at 12–13. She also believes she was placed on leave without pay during this time as a form of retribution for filing EEO complaint(s). Compl. at 3 ¶ 2, 13 ¶ 31. This cycle continued throughout the winter of 2013. Def.'s Ex. 12 at 30; Compl. at 12–13.

In February 2013, defendant denied plaintiff's request to telework four days per week, again citing insufficient supporting medical documentation, and also referring to plaintiff's declining job performance. Def.'s Ex. 12 at 31 ¶ 3. Defendant referred plaintiff to DLA personnel to discuss options, provided her with a performance plan, and encouraged her to return to work. *Id.* at 32 ¶¶ 1–3. Plaintiff asserts that DLA personnel were less than accommodating. Compl. at 13 ¶ 35, 14 ¶¶ 38-9, 15 ¶ 39. During March and April 2013, plaintiff was intermittently working from home, with alternating periods of leave. Def.'s Ex. 12 at 32 ¶¶ 4–5. Plaintiff believes that defendant intentionally delayed a decision regarding her requested accommodations. Compl. at 16–18. Defendant responds that it worked diligently to obtain necessary medical documentation. Def.'s Ex. 12 at 33–4.

Defendant emailed plaintiff in May 2013 indicating that, although her accommodation requests had not yet been formally denied, additional medical documentation was required. *Id.* at 33 ¶¶ 1–3. In the same email, plaintiff was granted temporary accommodation for eight hours of

telework per week. *Id.* at 33 ¶ 4. Plaintiff alleges that this arrangement unfairly forced her to take leave without pay. Compl. at 18 ¶¶ 52–3.

Plaintiff then requested a graduated telework schedule allowing her to work five days per week in the first month, four days per week in the second month, and then three days per week in the third month. Def.'s Ex. 12 at 36 ¶ 2; Compl. at 19 ¶ 61. On September 12, 2013, defendant e-mailed plaintiff asserting that her job responsibilities could not be reasonably accomplished by full-time telework and without personal interaction with the team, as expressed previously. Def.'s Ex. 12 at 37 ¶ 4; Compl. at 19 ¶ 61.

On November 13, 2013, defendant e-mailed plaintiff stating that her lack of in-office presence was negatively impacting her work team. *Id.* at 38 ¶ 3. On December 17, 2013, defendant formally declined plaintiff's full-time telework request. *Id.* at 39-40. The request was declined because (1) plaintiff had failed to provide sufficient medical documentation, (2) plaintiff's job responsibilities required at least some in-office work, and (3) plaintiff had demonstrated severe performance deficiencies while working full-time from home. *Id.* Defendant instead granted plaintiff an agreement to telework two days per week. *Id.* at 40 ¶ 1. Plaintiff declined this agreement. *Id.* at 40 ¶ 2.

On December 20, 2013, plaintiff was notified that her refusal to work in the office at least three days per week in compliance with the offered agreement would result in her being placed on "non-duty" status. *Id.* She was asked to submit an appropriate leave request or be considered in "absence without leave" ("AWOL") status. *Id.* at 40 ¶¶ 2–3. Plaintiff submitted requests for reconsideration which were denied. *Id.* at 40 ¶¶ 4, 7, 41 ¶ 1. On February 28, 2014, plaintiff was provided with her evaluation for the calendar year of 2013. *Id.* at 41 ¶¶ 2. She was rated unacceptable. *Id.* Defendant continued to offer the two-day per week telework agreement

throughout the spring of 2014, which plaintiff continually rejected, and plaintiff continued to submit medical notes for consideration. *Id.* at 41 ¶ 3. She was encouraged to return to work at any time. *Id.* at 60 ¶ 2, 61 ¶¶ 4–5, 62 ¶¶ 1–2.

Between April 2014 and November 2014, plaintiff was placed on AWOL status, aside from some hours which were considered holiday leave. Def.'s Ex. 4 at 16 ¶ 2. On November 19, 2014, plaintiff was given notice of proposed removal as a result of her AWOL status for approximately 14 pay periods. *Id.* Plaintiff was informed that she could submit a reply to this removal notice by December 19, 2014. *Id.* at 16 ¶ 4. On December 8, 2014, plaintiff's physician provided a letter which included several diagnoses for plaintiff and further indicated that plaintiff was deemed unable to work at all. Def.'s Ex. 4 at 16 ¶ 3.

Between December 2014 and mid-February 2015, plaintiff was continually AWOL, excepting certain days under the Family Medical Leave Act ("FMLA") and for which holiday leave applied. *Id.* at 16 ¶ 4, 17 ¶¶ 1–4. In a memorandum dated January 20, 2015, defendant upheld the proposed removal and issued defendant a decision letter. Plaintiff was then removed from her position on February 6, 2015. *See* DLA, Memorandum for Ms. Yolanda Bell (Feb. 11, 2015) ("Def.'s Ex. 16") at 1, 3.

It appears that plaintiff has not worked onsite since on or about January 7, 2013. DOD's Mem. of Law in Support of MSJ ("Def.'s Ex. 11") at 2 ¶ 1; Supp. Opp. at 8 ¶ 1. DLA has placed plaintiff in AWOL duty status off and on since December 30, 2013 until February 6, 2015, when she was removed. Def.'s Ex. 11 at 2 ¶ 1; Def.'s Ex. 16 at 1, 3.

As discussed, between 2013 and 2015, plaintiff filed several administrative actions and a lawsuit in the Eastern District of Virginia, as summarized below. *See* Supp. Opp. at 3–6; Def.'s Mot. at 3–10.

<u>First Formal EEO Complaint (No. DLAF-13-0039)</u>

On January 16, 2013, plaintiff filed her first formal EEO complaint (No. DLAF-13-0039) against DLA for "disability discrimination, failure to accommodate, hostile work environment, and retaliation for prior EEO activities." Compl. at 13 ¶ 31; Def.'s Mot. at 3 ¶ 1; EEO Compl., No. DLAF-13-0039 ("Def.'s Ex. 1"). Plaintiff alleged that her supervisor denied her requests for reasonable accommodation to telework from home, and instead continually pressured and harassed her to work in-office. Def.'s Mot. at 3 ¶ 1; Def.'s Ex. 1 at 1. The events chronicled in plaintiff's first EEO complaint occurred between February 28, 2012 and January 8, 2013. *Id.* However, plaintiff now alleges that the discrimination and retaliation began before February 2012. Supp. Opp. at 3 ¶ 4.

<u>Second Formal EEO Complaint (No. DLAF-13-0039)</u>

On August 14, 2013, plaintiff filed her second formal EEO Complaint, alleging "denial of reasonable accommodation, discrimination due to race, color, disability, and retaliation." Compl. ¶ 51; Def.'s Mot. at 3–4; EEO Compl., No. DLAF-13-0263 ("Def.'s Ex. 2"). Plaintiff again also explicitly asserted that she was subject to discrimination, retaliation, and a hostile work environment. Def.'s Mot. at 3–4; Def.'s Ex. 2. She chronicles incidents occurring between April 24, 2013 and July 11, 2013. *Id.* Plaintiff again requested to telework from home, as recommended by her physician, contesting the denial relating thereto. Compl. ¶¶ 52–9; Def.'s Mot. at 3 ¶ 2, 4 ¶ 1, Def.'s Ex. 2.

<u>First Direct MSPB Appeal (Nos. DC-0752-14-0051-I-1 & DC-0752-15-0853-I-1)</u>

On October 18, 2013, plaintiff filed her first direct appeal with the MSPB. Def.'s Mot. at 4 ¶¶ 2–4, 5 ¶¶ 1–2; MSPB Form 185-2 ("Def.'s Ex. 3") at 5. Among other allegations, plaintiff claimed that DLA constructively suspended her, beginning May 6, 2013, by failing to

accommodate her disability. Plaintiff amended her appeal twice to include claims that she continued to be constructively suspended through February 6, 2015, the date she was removed from her position with DLA. Def.'s Mot. at 4 ¶¶ 2–4, 5 ¶¶ 1–2; Def.'s Ex. 3 at 1–2.

On July 8, 2016, the MSPB ruled against plaintiff, thus dismissing the appeal. Def.'s Ex. 4 at 36 ¶ 2. The MSPB found that plaintiff could not have been constructively suspended during certain time periods because her absences did not extend beyond 14 consecutive days. The MSPB therefore lacked jurisdiction over those claims. *Id.* at 21–22.

Regarding the time periods over which it did have jurisdiction, the MSPB found conclusively that plaintiff failed to meet her burden to prove that she was constructively suspended. *Id.* at 35–36. "[T]he appellant failed to establish, by preponderant evidence, that she was constructively suspended because the agency prevented her from reporting for duty, and/or because she requested to return to work with certain medical restrictions and the agency failed to provide her with reasonable accommodation." *Id.* at 36 ¶ 1–2.

The MSPB notified plaintiff that its decision would become final on August 12, 2016, unless plaintiff petitioned for review with the full MSPB. *Id.* at 38. Plaintiff did not file a petition for review. *See* 5 U.S.C. § 7703(b)(1)(A); *see also* Def.'s Mot. at 5 ¶ 2. The MSPB also found that plaintiff failed to make a non-frivolous allegation that she was constructively suspended based upon intolerable working conditions. Def.'s Ex. 4 at 24–6.

In the present action, plaintiff seeks review of the MSPB decision regarding her alleged constructive suspension. Compl. at 2 ¶ 1; Supp. Opp. at 2–3.

Third & Fourth Formal EEO Complaints (DLAF-14-0083)

Plaintiff filed third and fourth formal complaints in January 2014 and on March 18, 2014, respectively. Def.'s Ex. 12 at 40 ¶ 6; Def.'s Mot. at 5–6; EEO Compl., No. DLAF-14-0083

("Def.'s Ex. 6").  Plaintiff alleged "disability discrimination, failure to accommodate, hostile work environment, and retaliation for prior EEO activities."  Compl. at 13 ¶ 31.  Plaintiff alleged that on December 18, 2013, her immediate supervisor discriminated against her and created a hostile work environment due to her race and disability, and, further, that her supervisor retaliated against her for filing EEO claims.  Lastly, plaintiff again claimed that DLA failed to reasonably accommodate her disabilities. Def.'s Mot. at 5–6; Def.'s Ex. 6.

Informal EEO Complaints

Additionally, on March 28, April 15, and April 25, 2014, plaintiff filed three to five additional informal EEO Complaints.  Supp. Opp. at 5 ¶ 3; Def.'s Mot. at 5–6; EEO Pre-Complaint Intake Forms ("Def.'s Ex. 7").  The parties disagree on the number of informal complaints filed, which is immaterial.  The parties agree, however, that these complaints contained allegations of reprisal, disability discrimination, and hostile work environment.  *Id.*  The allegations relate to incidents which purportedly took place on March 20, March 28, and April 3–5, 2014.  *Id.* Importantly, plaintiff points out that these complaints, which were later made part of her case before the Eastern District of Virginia, raised claims regarding "denial of family leave act requests, illegally placing [her] in a non-duty status [,] and charging [her] with AWOL."  Supp. Opp. at 5 ¶ 3.

DLA determined that some, if not all, of these informal claims were related to the first and second EEO complaints (13-0039 and 13-0263), which were already at the hearing stage.  Def.'s Mot. at 5-6; Def.'s Ex. 7 at 4, 12.  Therefore, DLA informed plaintiff that she could petition the administrate judge to amend her complaint with these additional allegations.  *Id.*

<u>Prior District Court Complaint (E.D. VA) (No. 14-cv-470 (TSE) (IDD))</u>

On April 29, 2014, plaintiff filed a *pro se* complaint against DOD in the U.S. District Court for the Eastern District of Virginia. *See Docket*, No. 14-cv-470 (TSE) (IDD) (Apr. 29, 2014) (ECF No. 1) ("Def.'s Ex. 8"). She was later granted leave to file an amended complaint and added additional claims. *See* Pl.'s Mot. Am. Compl. & Am. Compl., Case No. 14-470 (E.D. Va. June 11, 2014) (collectively ECF No. 18) (collectively "Def.'s Ex. 9"); Order Granting Pl.'s Mot. Am. Compl. (E.D. Va. June 20, 2014) (ECF No. 22) ("Def.'s Ex. 10"). Plaintiff sought "redress for defendant's failure to reasonably accommodate or to fully accommodate her disability for its unreasonable intrusion into her private medical affairs as a condition of engaging in the interactive accommodation, and for the other discrimination and retaliation that defendant visited upon plaintiff on account of her disabilities and her protected EEO activity." Def.'s Ex. 9 at 1–2.

Plaintiff brought specific claims under the Rehabilitation Act of 1973 (as amended, 29 U.S.C. § 701, *et seq.*) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16). *Id.* She also raised allegations of retaliation and violations of her civil rights. *Id.* at 2 ¶ 2. Plaintiff alleged that defendant, in handling her medical information, unfairly infringed on her privacy rights and violated its own policies and HIPPA. *Id.* at 11 ¶ 38. Importantly, plaintiff explicitly alleged that she was forced into a non-pay status, which caused her to lose salary. *Id.* at 24 ¶ 85, 29 ¶ 109, 30 ¶111, 41–2 (Ct. III). Among other relief, plaintiff sought compensatory damages, reimbursement for backpay, an injunction to grant her proposed reasonable accommodations, reassignment to a new supervisor, correction of her personnel records, and written declarations declaring that plaintiff faced unfair discrimination. *Id.* at 2 ¶ 4, 48–9.

Plaintiff now states that she only brought failure to accommodate claims before the Eastern District of Virginia, without any disability discrimination claims. Supp. Opp. at 8 ¶¶ 1–2. This

assertion is contrary to the plain record. The Eastern District of Virginia clearly adjudicated plaintiff's disability discrimination claims. Def.'s Ex. 12 at 41–4. In her complaint in that case, plaintiff overtly alleges disability discrimination and retaliation, dedicating 30 pages to those allegations. Def.'s Ex. 9 at 2 ¶¶ 2–4, 4 at n. 1 ("the discrimination portions. . . are part of plaintiff[']s complaint"); *id.* at 5–35.

Plaintiff also incorporated her formal EEO complaints into that action and explicitly sought review therein. *Id.* at 14 ¶ 51 (referring to the filing of No. 13-0039), 18 ¶ 71 (referring to the filing of No. 13-0263); 31 ¶ 116 (referring to the filing of No. 14-0083). Plaintiff also introduced the issues from her informal EEO complaints into the amended complaint. *Id.* at 32 ¶¶ 122–28. These amendments included claims for discrimination based on "race, color, disability, and retaliation." *Id.* at 19 ¶ 71.

In both her complaints, plaintiff also addressed her then-pending MSPB appeal. *Id.* at 4 n. 1, 24 ¶ 85, 29 ¶ 109, 30 ¶111, 27 ¶ 100, 28 ¶ 104, 41–2 (Ct. III). Although plaintiff may have wished to postpone any determinations regarding her "constructive suspension" to avoid *res judicata*, *id.* at 4 n. 1., that claim was necessarily intertwined with her other claims and adjudication was unavoidable. *See id.* By definition, a suspension or constructive suspension is an "adverse employment action." *See Tyndall v. Department of the Navy*, 5 M.S.P.R. 194, 196 (1981). The Eastern District of Virginia very clearly addressed and dismissed plaintiff's claims that she suffered a constructive suspension based on adverse action. Def.'s Ex. 12 at 59 ¶ 3, 60–3, 59 ¶ 3 ("[t]here is also an argument made by defendant about whether she has established the adverse employment action that's required.").

In the prior matter, DOD filed a Motion for Summary Judgment. DOD's Mot. for Sum. Jgmt., No. 14-cv-470 (TSE) (IDD) (July 28, 2014) (ECF No. 29) ("Def.'s Ex. 11"). On October

14, 2014, the Eastern District of Virginia granted summary judgment on behalf of DOD as to all claims. Def.'s Ex. 12 at 67; Def.'s Ex.13; Judgment, *Bell v. Dept. of Defense*, No. 14-cv-470 (TSE) (IDD) (E.D. Va. Oct. 27, 2014) (ECF No. 60) ("Def.'s Ex. 14"). The court found that there was no violation of the Rehabilitation Act; defendant proved that plaintiff could not have performed the essential functions of her position with full-time telework. Def.'s Ex. 12 at 46–50.

The court also found that plaintiff could not make a *prima facie* reasonable accommodation violation claim, given that DOD had provided plaintiff an accommodation to partially telework. *Id.* at 51–4. "[I]t just seems to the court as I review this record, that the agency did bend over backward to try to accommodate her." *Id.* at 54. In that regard, the court also found that DOD participated in the interactive grievance process in good faith. *Id.* at 55.

Further, the court found no evidence to sustain any discrimination claim. *Id.* at 44, 57–64. The court determined that DOD provided plaintiff substantial accommodations, and despite those accommodations, plaintiff could still not perform her required duties. *Id.* Moreover, "[e]ven if plaintiff could somehow make out a *prima facie* case with disability discrimination, which she doesn't, failing to meet three of the four elements, defendant nonetheless does articulate a legitimate nondiscriminatory reason for the action." *Id.* at 62–3. The court concluded, "[plaintiff] can't point to a single piece of record evidence to rebut defendant's legitimate nondiscriminatory reason that her poor job performance was the reason for any adverse action taken toward plaintiff." *Id.* at 63–4. DLA never disputed that Ms. Bell had a disability, and it "tried very hard to accommodate that disability," but when "she insisted on having five days a week [of telework], that was too much." *Id.* at 64. The court also denied plaintiff's unlawful retaliation claim. *Id.* at 64–67. It found a lack of causal connection between defendant's actions and any protected

activity.  *Id.* at 65.  "She [plaintiff] cannot establish that her protected activity was a but-for cause of any alleged adverse action by this employer."  *Id.* at 66.

Notably, the Eastern District found that plaintiff did not suffer any adverse employment actions.  The court specifically found that when she was placed in non-duty status, or when she was taking unpaid leave, it was *justified* by plaintiff's lack of cooperation and/or lack of response to defendant's many requests.  Additionally, plaintiff was continually encouraged to return to work and was given ample opportunity to do so.  The court found that plaintiff had voluntarily chosen to abstain from work because she was not approved for full-time telework.  *Id.* at 60–2.  More specifically, the court held

> . . . the undisputed summary judgment record shows clearly that defendant was willing to continue dialogue with plaintiff as to how she could return to duty and placed her in non-duty status temporarily due to her nonresponsiveness and repeated refusal to comply with requests for supporting documentation. I think contrasting this case with other cases where an employee was placed in a *non-pay or non-duty status* for four days could be an adverse employment action.  In that case, for example, in the *Filius* case in the 11th Circuit, the employee was not paid while on a non-duty status, and he was not given any option to return to work. Here, [plaintiff] was given an option to return to work, and she could have signed a two-day telework agreement. She could have -- yes, she could have signed the two-day telework agreement. So the summary judgment record does not demonstrate that she suffered an *adverse employment action within the meaning of the Rehabilitation Act.*

*Id.* at 61–2 (emphasis added).  While the court does not use the buzzwords "constructively suspended," it is abundantly clear that it determined plaintiff's AWOL status and periods of unpaid leave to have been warranted.  *Id.*  In fact, plaintiff's third EEO complaints, and informal EEO complaints, contained allegations relating to "denial of family leave act requests, illegally placing [her] in a non-duty status [,] and charging [her] with AWOL."  Supp.  Opp. at 5 ¶ 3; Def.'s Exs. 1,

2, 6, 7.  Again, these EEO complaints were addressed by the Eastern District as part of that lawsuit.

Def.'s Ex. 12 at 60–2; Def.'s Ex. 9 at 14 ¶ 51, 18 ¶ 71, 19 ¶ 71, 31 ¶ 116, 32 ¶¶ 122–28.

Plaintiff appealed to the U.S. Court of Appeals for the Fourth Circuit.  On May 20, 2015, the Fourth Circuit affirmed the decision of the district court.  *Bell v. Department of Defense*, 603 Fed. Appx. 211 (4th Cir. May 20, 2015) (per curiam) ("Def.'s Ex. 15") at 1–2.  Plaintiff's petition for a rehearing and rehearing en banc were both denied on July 27, 2015.  *Bell v. Department of Defense*, Dkt. No. 14-cv- 2223 (4th Cir. July 27, 2015), *id.* at 3.  Plaintiff then filed a Rule 60(b) motion for relief from final judgment in the district court under Fed. R. Civ. P. 60(b), which was also subsequently denied. *Bell v. Department of Defense*, No. 14-cv-470 (E.D. Va. Oct. 8, 2015) (ECF Nos. 90, 96), *id.* at 4–5.  Plaintiff appealed the district court's order denying her Rule 60(b) motion and denial of reconsideration of such.  The Fourth Circuit affirmed in part and dismissed in part, entreating judgment for DOD.  *Bell v. Department of Defense*, 668 Fed. Appx. 454 (4th Cir. August 29, 2015) (per curiam), *id.* at 8–12. The Fourth Circuit also denied an additional request for a rehearing *en banc*.  *Bell v. Department of Defense*, Dkt. No. 152367 (4th Cir. December 13, 2015), *id.* at 14.

Second MSPB Appeal (No. 201500948)

On February 6, 2015, plaintiff was removed from her job in federal service for being absent without leave ("AWOL") for six months.  Def.'s Mot. at 10 ¶ 2; Supp. Opp. at 15 ¶ 1.  On March 5, 2015, plaintiff appealed her removal from federal service to the MSPB.  Def.'s Ex. 16; MSPB Appeal Form (Mar. 5, 2015) ("Def.'s Ex. 17") at 12.  She again alleged that DLA engaged in unlawful discrimination and retaliation under Title VII and the Rehabilitation Act.  *Id.*  Until very recently, plaintiff has explicitly indicated that the termination/removal claim and the second direct MSPB appeal is not part of the instant litigation.  Supp. Opp. at 6 ¶ 1; Sec. Mot. to Stay.

## STANDARD OF REVIEW

Defendant moves to dismiss all claims pursuant to Federal Rules 12(b)(1) and 12(b)(6).[3] Def.'s Mot. at 12-15. In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court must "treat a complaint's factual allegations as true . . . and must grant a plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, a court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### Subject Matter Jurisdiction

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F. 3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

---

[3] Defendant also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, defendant requests that this court transfer venue to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). Def.'s Mot. at 13–14. Given that the Court dismisses this case on other grounds, it does not address defendant's venue argument.

When reviewing a challenge pursuant to Rule 12(b)(1), the court may consider documents outside the pleadings to assure itself that it has jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction, or subject-matter jurisdiction." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court. *Haase*, 835 F.2d at 905.

<u>Failure to State a Claim</u>

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.,* quoting

*Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where an action is brought by a *pro se* plaintiff, as in the instant matter, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, a court need not accept inferences drawn by a plaintiff, *pro se* or otherwise, if those inferences are unsupported by facts alleged in the complaint, nor must it be bound to accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), *citing EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## DISCUSSION

### Res Judicata & Collateral Estoppel (All Claims)

Defendant argues that all of plaintiff's claims in this case have been fully and finally adjudicated and are therefore barred by the doctrine of *res judicata.* Def.'s Mot. at 18–20; defendant's reply to plaintiff's opposition ("Def.'s Reply") [ECF 29] at 2–6. "The doctrine of *res judicata* prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F. 2d 944, 946 (D.C. Cir. 1983). The doctrine contains two theoretical components, which may operate together or separately, more

specifically, claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Both theories are applicable to the instant matter.

*Claim Preclusion*

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cty. of Sac.*, 94 U.S. 351, 352 (1876)); *SBC Commc'ns, Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005). A party cannot escape the preclusive effect of the doctrine by raising a different legal theory or seeking a different remedy that was available to her in the prior action. *See U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985). This court agrees with defendant.

Plaintiff's current allegations are virtually identical to those she put forth in the Eastern District of Virginia. *See* Def.'s Ex. 9 at 1–2, 48–9; Compl. at 1–2; 22–3. Plaintiff has sued the same defendant for the same alleged course of conduct, namely, failure to accommodate, discrimination, and retaliation. *Id.* Those claims were all thoroughly addressed by the Eastern District of Virginia, and a final judgment was rendered in favor of DOD. *See generally*, Def.'s Exs. 12–15. Plaintiff argues that only the failure to accommodate claim was filed in her prior lawsuit, however, that is abjectly untrue. Supp. Opp. at 8 ¶¶ 1–2. The claims of failure to accommodate, discrimination, and retaliation, were all filed with the Eastern District, and have already been fully and completely adjudicated. Def.'s Ex. 9 at 14, 19, 35–47, Def.'s Ex. 12 at 41–67. The pleadings and orders issued in that case are all matters of public record of which this Court may take judicial notice. *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 5 n. 3 (D.D.C. 2011); *Lewis v. Drug Enforcement Admin.*, 777 F. Supp .2d 151, 159 (D.D.C.2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

A subsequent lawsuit will be precluded if "there has been prior litigation (1) involving the same claims or cause of action (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). To determine whether the facts of two cases are similar enough to constitute the same "cause of action," courts must consider whether the lawsuits turn on the same "nucleus of facts." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). This involves an assessment of "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949 n.5 (internal citation omitted). The current claims inarguably arise from the same nucleus of facts as the claims before the Eastern District of Virginia. Def.'s Ex. 12 at 41–67.

In this matter, plaintiff raises the same claims against the same party. "This is precisely what is barred by *res judicata*." *Apotex, Inc. v. Food & Drug Admin.*, 393 F. 3d 210, 217–18 (D.C. Cir. 2004). The parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *Montana v. United States*, 440 U.S. 147, 162 (1979).

Plaintiff attempts now to narrow her action to a review of her first MSPB appeal. Supp. Opp. at 2–3. While this court has technical jurisdiction to review a decision of the MSPB in a mixed-case appeal, *see Perry v. Merit Systems Protection*, 137 S. Ct. 1975, 1987–88 (2017), the

constructive suspension issue was already decided by the Eastern District of Virginia. Def.'s Ex. 12 at 59 ¶ 3, 60–3, 59 ¶ 3.

Plaintiff cannot escape this prior adjudication by now referring to the alleged adverse employment action brought before the EEO and the Eastern District of Virginia as a "constructive suspension." Supp. Opp. at 2–3. The substance of the claim is the same. Def.'s Ex. 9 at 2 ¶ 3, 24 ¶ 85, 29 ¶ 109, 30 ¶ 111, 41–2 (Ct. III); Def.'s Ex. 12 at 59 ¶ 3, 60–3, 59. As part of her complaint in the Eastern District, plaintiff alleged several times that defendant harmed her by "forcing [her] into non-pay status . . . repeatedly shifting and ultimately limiting and conditioning [her] accommodation in such a way that prevents [her] from earning her full salary." Def.'s Ex. 9 at 2 ¶ 3, 24 ¶ 85, 29 ¶ 109, 30 ¶ 111, 41–2 (Ct. III). Plaintiff seeks the same relief here as in the prior suit. Among the other same requests, plaintiff demands backpay from "2012 onward," and the approval of her preferred accommodations. Compl. at 43. Subsequently repurposing her claims as "constructive suspension," is a matter of semantics and form over function. *Id.* at 2 ¶ 3, 24 ¶ 85, 29 ¶ 109, 30 ¶111, 41–2 (Ct. III). Although some time has passed since the Eastern District of Virginia rendered its decision, plaintiff has not alleged any change in circumstances or new facts. *See* Def.'s Exs. 12–14.

The Eastern District of Virginia granted summary judgment, and in doing so, clearly addressed the subject of plaintiff's alleged constructive suspension, regardless of the way the cause of action was labeled. Def.'s Ex. 12 at 59 ¶ 3, 60–3, 59. The Court found that defendant reasonably attempted to accommodate plaintiff and that it acted in good faith. *Id.* at 55. It further found that plaintiff and her providers failed to cooperate and provide necessary information throughout the accommodation request process. *Id.* at 30–41. It found that defendant exercised appropriate discretion in determining that full telework accommodation was inappropriate based on plaintiff's

required job duties and because plaintiff's job performance had been suffering. *Id.* at 46–50. The court found that plaintiff voluntarily determined not to work when full-time telework was not afforded, and that such a request was unreasonable. *Id.* at 45, 51, 53–4.

In addition to granting summary judgment as to the failure to accommodate, retaliation, and discrimination claims, the court also found that defendant appropriately placed plaintiff in non-duty status "due to her unresponsiveness and refusal to comply with requests for supporting documentation." *Id.* at 61. Plaintiff was encouraged and given the option to return to work, however, she refused because she did not want to return to work in-office. *Id.* at 32 ¶¶ 1–3. Defendant provided performance-based reasons as to its determinations and was not provided any information with which it could have modified its decision. *Id.* at 46–50. For those reasons, the court found that plaintiff was not entitled to backpay when in "non-duty" status or otherwise. *Id.* at 65–6. If this court were to address plaintiff's instant claims, it would serve as a complete replication of the analysis already undertaken by the Eastern District. Therefore, plaintiff's claims are barred. *Page*, 729 F. 2d at 820.

The court also agrees with defendant that a claim of constructive suspension under the Rehabilitation Act based on disability discrimination must be predicated on a showing of either intentional discrimination or retaliation. Def.'s Reply at 2–4. An employee's inability to prove a failure to accommodate claim, as in the plaintiff's case before the Eastern District of Virginia necessarily means that a constructive suspension claim must also fail, if founded on the same request(s). *Ward v. McDonald*, 762 F.3d 24, 35–6 (D.C. Cir. 2014) (applying this principle to constructive discharge); *see also Butler v. WMTA*, 275 F. Supp. 3d 70 (D.D.C. 2017); *Thibeault v. MSPB*, 611 F. App'x 975, 979 (Fed. Cir. 2015) (finding that a plaintiff must demonstrate that employer erred by failing to provide reasonable accommodations in order to establish that he was

constructively suspended); *Porter v. Jackson*, 668 F. Supp. 2d 222, 235 (D.D.C. 2009) (noting that employee's constructive suspension and termination claims against her former employer were "outgrowths of plaintiff's refusal to accept [the agency's] proposed accommodation and her subsequent absence from work."). Furthermore, plaintiff certainly *could have* brought an explicit constructive suspension claim as part of her prior lawsuit, assuming for the sake of argument that she did not. *Drake*, 291 F.3d at 66.

It should be noted that plaintiff attempted to preemptively preserve her right to litigate, or relitigate, the constructive suspension claim, based on assertions in her filings before the Eastern District. Def.'s Ex. 9 at 4 n. 1. However, plaintiff had no choice but to bring her constructive suspension claim before the Eastern District, as it is inextricably connected to her allegations of failure to accommodate, and her requests for alleged lost wages. *Porter,* 668 F. Supp. 2d at 235; Def.'s Ex. 12 at 61–2. Regardless of any anticipatory disclaimer, a litigant may not proactively and unliterally avoid *res judicata* by merely announcing an intention to do so, and certainly not without a waiver by defendant. *See, e.g., U. S. v. Sioux Nation of Indians*, 448 U.S. 371, 433 (1980) (holding that *res judicata* is a defense ". . . adopted by the courts . . . [and] grounded on the theory that one litigant cannot unduly consume the time of the court at the expense of other litigants, and that, once the court has finally decided an issue, a litigant cannot demand that it be decided again.") (internal citation omitted).

The Eastern District of Virginia's grant of summary judgment also included plaintiff's claims regarding privacy violations. Def.'s Ex. 12 at 67; Def.'s Ex. 13; Def.'s Ex. 14. Even if it had not, plaintiff had ample opportunity to raise them. *Sheppard*, 791 F. Supp. 2d at 5 (quoting *Drake*, 291 F. 3d at 66); *see also Apotex*, 393 F. 3d at 218 (D.C. Cir. 2004); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997). The alleged incidents regarding

improper disclosure of plaintiff's medical information are nearly contemporaneous with her first EEO complaint, making those incidents now approximately six years old. Compl. at 9–10. These alleged incidents predated the lawsuit filed in the Eastern District. *See generally*, Def.'s Ex. 8.

Plaintiff also raised her claims relating to the Privacy Act and HIPPA in her prior lawsuit. Def.'s Ex. 9 at 11 ¶ 38. While the Eastern District's opinion does not devote significant time to this particular claim, it was before that court and the grant of summary judgment was extended to all claims. Def.'s Ex. 12 at 67; Def.'s Exs. 13–15. Even assuming *arguendo* that those claims are not precluded, such claims are nonetheless barred as the statutory language of HIPAA does not create a private cause of action. *Lee-Thomas v. LabCorp*, --- F. Supp. 3d ----, 2018 WL 3014824 at *2 (D.D.C. June 15, 2018) (internal citations omitted).

*Issue Preclusion*

Issue preclusion, or collateral estoppel, bars 'successive litigation of an issue of fact or law (1) actually litigated and (2) resolved in a valid court determination (3) essential to the prior judgment.' " *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 72 (D.D.C. 2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). Issue preclusion bars successive litigation even if the issue recurs in the context of a different claim, *see Taylor*, 553 U.S. at 892, and it does not require mutuality of parties, *see Gov't of Rwanda v. Johnson*, 409 F.3d 368, 374 (D.C. Cir. 2005). Moreover, preclusion "must not work a basic unfairness to the party bound by the first determination." *Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (internal citation omitted).

Issue preclusion prevents the re-litigation of any issue that was raised and decided in a prior action. *Ficken v. Golden*, 696 F. Supp. 2d 21, 32 (D.D.C. 2010) (internal citations omitted). An issue is precluded if

> [t]he same issue . . . being raised [was] contested by
> the parties and submitted for judicial determination in the
> prior case, the issue [was] actually and necessarily
> determined by a court of competent jurisdiction in that prior
> case, [and] preclusion . . . must not work a basic unfairness
> to the party bound by the first determination.

*Martin*, 488 F. 3d at 454 (quoting *Yamaha Corp. of Am. v. United States*, 961 F. 2d 245, 254 (D.C. Cir. 1992)).  Unfairness may occur where "the party to be bound lacked an incentive to litigate in the first trial."  *Otherson v. DOJ.*, 711 F. 2d 267, 273 (D.C. Cir. 1983) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971)).  Additionally, "[i]n determining whether issue preclusion exists, a court may take judicial notice of all relevant facts that are shown by the court's own records, as well as public records from other proceedings."  *Budik v. Ashley*, 36 F. Supp. 3d 132, 142 (D.D.C. 2014).  The issue preclusion analysis does not call for a court's review of the merits of the prior determination.  *See Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006).

Again, plaintiff has already raised her allegation of constructive suspension.  *See* Def.'s Ex. 9 at 24 ¶ 85, 29 ¶ 109, 30 ¶111, 41–2 (Ct. III); Def.'s Ex. 12 at 59 ¶ 3, 60–3, 59; *see generally* Def.'s Exs. 1–8, 17.  She has repeatedly asserted that her disability accommodations were unfairly denied, preventing plaintiff from working, causing her to unfairly sacrifice wages and exhaust her leave.  Plaintiff has been raising these same issues since 2012.  *Id.*  These issues were determined by courts of competent jurisdiction.  *See* generally Def.'s Exs. 12–15.  Simply put, if this court proceeded on the issues, it would constitute a re-litigation.  *See Ficken*, 696 F. Supp. 2d at 32. Therefore, plaintiff is foreclosed from litigating the issues anew, with the aimed attempt at a more favorable outcome.

<u>Remaining Constitutional Claims</u>

Plaintiff raises alleged constitutional violations, namely, alleged Fifth and Fourteenth Amendment violations of due process. Compl. at 1 ¶ 1; Supp. Opp. at 2 ¶ 1, 11 ¶ 1, 12 ¶ 2. While her claims are not entirely clear, to the extent that the allegations are related to the denial of her accommodations and surrounding actions, plaintiff certainly could have brought these constitutional claims as part of her case in the Eastern District of Virginia. *Drake*, 291 F.3d at 66.

Additionally, these claims are dismissed for lack of subject matter jurisdiction because Title VII, and by extension the Rehabilitation Act, provides an exclusive remedy for claims of discrimination in federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 837–39 (1976). *See also Lewis v. Cohen*, No. 97–5003, 1997 WL 362754, at *1 (D.C. Cir. May 15, 1997); *Bush v. Lucas*, 462 U.S. 367, 372–73 (1983); *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983); *King v. Holder*, 941 F. Supp. 2d 83, 92 (D.D.C. 2013). Furthermore, "the [CRSA] 'is the exclusive remedy' for government employees who have suffered adverse personnel actions, 'even if it affords incomplete relief.' " *Kursar v. Transp. Sec. Admin.*, 581 F. Supp. 2d 7, 16 (D.D.C. 2008) (*quoting Hall v. Clinton*, 143 F. Supp. 2d 1, 5 (D.D.C. 2001)).

Therefore, because Title VII and the CSRA are the statutory schemes available to challenge personnel actions occurring during her federal employment, plaintiff may not proceed with her separate constitutional due process claims. *Townsend v. United States*, 236 F. Supp. 3d 280, 321 (D.D.C. 2017) (quoting *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.D.C. 1988)); *Davis v. Billington*, 681 F.3d 377, 388 (D.C. Cir. 2012); *Cross v. Samper*, 501 F. Supp. 2d 59, 62–3 (D.D.C. 2007).[4]

---

[4]  Moreover, to the extent that plaintiff seeks money damages for such alleged constitutional violations, the United States has not waived its sovereign immunity for such claims. *See Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Dalehite v. United States*, 346 U.S. 15, 30 (1953).

Judicial Review of First MSPB Appeal Determination

As *res judicata* precludes this court from making any original finding of fact regarding plaintiff's claims, plaintiff attempts to reposition this action as a request for review of the first MSPB decision. Supp. Opp. at 2–3. She also puts forth supplemental "due process" violations, alleging that the MSPB Administrative Law Judge and DOD engaged in misconduct during the discovery process of her first MSPB appeal. *Id.* at 8–9.

As justification for her direct appeal to the MSPB, plaintiff alleged that DOD took an "adverse action" against her, pursuant to the CSRA. *See Greenhouse v. Geren*, 574 F. Supp. 2d 57, 65–8 (D.D.C. 2008); Def.'s Ex. 12 at 59 ¶ 3, 60–3. Under the CRSA, these actions include (1) a removal, (2) a suspension for more than 14 days, (3) a reduction in grade, (4) a reduction in pay, or (5) a furlough of 30 days or less. 5 U.S.C. § 7512. When an employee challenges an adverse personnel action that is subject to appeal to the MSPB, and such challenge is coupled with a discrimination claim, it is considered a "mixed case." 5 U.S.C. § 7702. In such cases a litigant must navigate the procedural scheme of Title VII and the CRSA. *Id.*

First, the aggrieved party must decide whether to file a "mixed case complaint" with his or her agency's EEO office or file a "mixed case appeal" directly with the MSPB. 29 C.F.R. § 1614.302(b). Whichever action is filed first is considered an election to proceed in that forum. *Mincer v. Whitmore*, No. 02-5238, 2003 WL 21769851, at *1 (D.C. Cir. July 16, 2003) (citing 29 C.F.R. § 1614.302(b)); *Economou v. Caldera*, 286 F.3d 144, 149 (2d Cir. 2002). "This binding 'election' between the MSPB and EEO remedies occurs as soon as a formal petition is filed in either forum." *Economou*, 286 F.3d at 149 (citing 29 C.F.R. § 1614.302(b), § 1614.301(a)). "Once a federal employee chooses a particular administrative route, she must exhaust the remedies in that forum." *Morris v. Jackson*, 842 F. Supp. 2d 171, 177 (D.D.C. 2012) (internal citation omitted);

*see also Stoll v. Principi*, 449 F.3d 263, 265–66 (1st Cir. 2006) ("The lodging of either a formal appeal with the Board or a formal complaint with the agency demarcates the point of no return.").

Defendant raises a valid question as to whether, given the existing EEO complaints and the soon-after pending litigation in the Eastern District of Virginia, the MSPB should have even addressed the first direct appeal. *See Economou*, 286 F.3d at 149; Def.'s Reply at 4–5. Plaintiff first elected to file complaints on comparable issues with the EEO before she filed her first MSPB mixed-case appeal. *See generally*, Def.'s Exs. 1–9. It would appear that plaintiff has inappropriately split her claims in an attempt to obtain several bites at the apple.

Assuming, however, that the MSPB review was proper and, further, that plaintiff was theoretically entitled to a review, her request would be denied as time-barred. Once the MSPB decision became final, plaintiff had 30 days to appeal the claim to the appropriate district court. 5 U.S.C. § 7703(b). The MSPB decision became final on August 12, 2016. Def.'s Ex. 4 at 38. Therefore, plaintiff was obligated to file an appeal of that decision in this court on or before September 11, 2016. 5 U.S.C. § 7703(b). However, plaintiff did not commence this action until December 7, 2016. *See generally*, Compl. [at docket, ECF No. 1]. Plaintiff filed this action nearly three months after she would have received notice of the MSPB's final decision. *Id.* "The statutory time limit contained in § 7703(b)([2]) is jurisdictional, and thus cannot be extended for any reason," *Abou–Hussein v. Mabus*, 953 F. Supp. 2d 251, 262 (D.D.C. 2013) (citing *King v. Dole*, 782 F.2d 274, 275–76 (D.C. Cir. 1986)). Consequently, the court must also dismiss the MSPB claim for lack of subject-matter jurisdiction.

**PLAINTIFF'S REMAINING MOTIONS**

Motion for Reconsideration of Stay

Plaintiff has filed a motion for reconsideration of stay ("Mot. for Recon.") [ECF No. 23], which defendant opposed [ECF No. 25]. The court denied plaintiff's motion to stay ("Mot. to Stay") [ECF No. 16] on May 9, 2018. *See* Order Dismissing Plaintiff's Mot. to Stay ("Ord. Den. St.") (D.D.C. May 9, 2018). At the time, the court found that this matter has had been pending for over seventeen months with little progress due to plaintiff's repeated motions for extension. Ord. Den. St. at 1–2. Defendant's motion to dismiss had been pending for well over a year with no response from plaintiff. *Id.* Plaintiff requested that the court stay the litigation to await the outcome of additional MSPB proceedings. Mot. to Stay at 1–2. The court found that there was no compelling reason to issue such a stay, which would have resulted only in further delay of this case. Ord. Den. St. at 1 ¶ 2.

The motion for reconsideration is devoid of any compelling reason to stay this litigation. Plaintiff's primary argument is that defendant contested the jurisdiction of this court to entertain a review of the first MSPB determination. Mot. for Recon. at 2 ¶ 2. While it is not entirely clear what this argument has to do with staying the case, defendant shortly thereafter conceded that this court has jurisdiction over a mixed-case appeal. *See* Def.'s Reply at 7–8. Therefore, plaintiff's argument is moot, and her motion will be denied.

Motion to Clarify

Plaintiff also filed a motion to clarify ("Mot. to Cl.") [ECF No. 25]. Plaintiff requests clarification of certain arguments contained in defendant's opposition to her motion to stay. Mot. to Cl. at 1 ¶ 1. Plaintiff also requests that the court provide her with advice regarding the appropriate timing and strategy for her current and potential future claims. *Id.* The court can

neither instruct nor advocate for a *pro se* litigant." *MacLeod v. Georgetown Univ. Med. Ctr.*, 736 A. 2d 977, 979 (D.D.C. 1999); *Solomon v. Fairfax Vill. Condo. IV Unit Owner's Ass'n*, 621 A. 2d 378, 380 n. 2 (D.D.C. 1993) (holding that a *pro se* litigant cannot generally be permitted to shift the burden of litigating his case to the courts, nor avoid the risks of failure that attend his decision to forego expert assistance) (internal citations omitted); *Moore v. Agency for Int'l Dev.*, 994 F. 2d 874, 876 (D.C. Cir. 1993) (holding that courts "do [ ] not need to provide detailed guidance to *pro se* litigants."). Therefore, the motion and relief requested therein is denied.

### "*Ex Parte*" Letter

On June 4, 2018, plaintiff filed an "*ex parte*" letter ("Ex P. Let.") [ECF No. 28] requesting certain accommodations. Plaintiff appeared to serve the other side with this letter, however, because defendant filed an opposition [ECF No. 30]. In the letter, plaintiff discusses the hardships of filing multiple cases in this court.[5] Ex P. Let. at 1 ¶ 1. Plaintiff asks that the court allow her to ". . . take a moment . . . to lay [] out [her] actions side by side to see where they may cross or overlap." *Id.* Again, the court cannot advocate or provide advice to a litigant. *MacLeod*, 736 A. 2d at 979; *Solomon*, 621 A. 2d at 380 n. 2; *Moore*, 994 F.2d at 876.

To the extent that plaintiff required time to compare her matters filed before this court, she has now had ample time to do so. Plaintiff's request was filed in early June, and the instant opinion is now being rendered in September. *See generally*, Ex P. Let. Therefore, plaintiff has had meaningful opportunity to assess her matters and any applicability one may have to one another.

---

[5] In the past five years plaintiff has filed eleven cases in this court. Other than this case, plaintiff has filed: *Bell v. U.S.*, No. 1:18-cv-00738-RC (D.D.C. 2018) (currently active); *Bell v. Dep't of Defense*, No. 1:18-cv-01498-RC (D.D.C. 2018) (currently active); *Bell v. U.S.*, No. 1:16-cv-02083-RC (D.D.C. 2018) (closed); *Bell v. Dep't of the Interior*, No. 1:16-cv-02407-RC (D.D.C. 2017) (closed); *Bell v. Dep't of Defense*, No. 1:16-cv-0959-RC (D.D.C. 2016) (currently active); *Bell v. Dep't of Defense*, No. 1:16-mc-01020-RC (D.D.C. 2016) (closed); *Bell v. Dep't of the Interior*, No. 1:16-mc-02434-RC (D.D.C. 2016) (closed); *Bell v. Dep't of Defense*, No. 1:15-cv-01813-RBW (D.D.C. 2015) (closed); *Bell v. Dep't of the Interior*, No. 1:15-cv-01812-RBW (D.D.C. 2015) (closed); *Bell v. Jewell*, No. 1:13-mc-00747-ABJ (D.D.C. 2013).

Plaintiff has not filed any motion for consolidation to date. *Id.* at 1 ¶ 1. Therefore, plaintiff's request will be denied. Moreover, to the extent that she seeks more time, there is no indication that more time is necessary to bring this case to a resolution and the record reflects that this Court has been exceedingly generous in granting plaintiff extra time when requested.

Requests for Voluntary Dismissal

Plaintiff filed a response to defendant's reply opposition regarding certain requests ("Pl.'s Resp.") [ECF No. 31]. As far as plaintiff requests voluntary dismissal of her age discrimination claims, the court will allow dismissal without prejudice of those claims. Plaintiff has been clear that she seeks to dismiss those specific claims, which were not addressed by defendant as part of this action anyhow. *See generally*, Def.'s Mot; *see also* Supp. Opp. at 3 ¶ 2, 15 ¶ 3. However, plaintiff's other requests for voluntary dismissal, if any, are nebulous. Plaintiff seeks voluntary dismissal of certain claims only in the alternative of dismissal of her age discrimination claims. Pl.'s Resp. at 2 ¶ 3. Because the court has dismissed the age discrimination claims without prejudice, it need not fully address the alternative relief requested.[6]

Requests to Amend Complaint

Plaintiff requests to amend the complaint, a request which was included in her oppositions to defendant's motion to dismiss and in her response to defendant's reply in opposition. Pl.'s Resp. at 1–2; Supp. Opp. at 1, 5. Defendant opposes this request. Def.'s Reply at 8–9. It is not entirely clear what portions of the complaint plaintiff seeks to amend. However, in plaintiff's supplemental

---

[6] It is worth noting that voluntary dismissal of the other claims in this matter, pursuant to Fed. R. Civ. P. 41(a)(2), would be improper. The court finds that such a dismissal would cause defendant prejudice, and would further cause excessive delay, which is indicative of a lack of diligence by plaintiff in prosecuting this action. *See In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 304 (D.D.C. 2000). This case has been pending for close to two years. Defendant's motion to dismiss was filed on February 13, 2017, and plaintiff was provided with multiple extensions before filing her reply, approximately thirteen months later. Only subsequent to the filing of a dispositive motion, and after years of pending litigation, did plaintiff hint at requests for voluntary dismissal, which is the definition of prejudicial. *See id.* Therefore, any additional requests for voluntary dismissal of claims would be inappropriate.

opposition, she indicates that she filed her amended complaint as part of the arguments therein. Supp. Opp. at 5 ¶ 2. In that regard, plaintiff includes underlined portions within the opposition, which the court construes as the proposed amendments to the complaint. *Id.* at 8–10. The additional arguments presented allege fraud and/or due process violations that occurred during the MSPB process. *Id.* The court has addressed these additional claims herein and no relief is therefore required. The court denies plaintiff's requests to amend.

<u>Motion to Hold in Abeyance/Second Motion for Stay</u>

Lastly, plaintiff has filed a motion to hold this case in abeyance, and in furtherance, requests a stay of this case. *See* Sec. Mot. to Stay at 1. Defendant opposes the request to suspend this action. *See* Defendant's Memorandum in Opposition to Sec. Mot. to Stay ("Def.'s Opp. to SMS") [ECF No. 34]. In support, plaintiff indicates that her Second MSPB Appeal (presumptively, No. 201500948) is now completed as the Administrative Law Judge issued a decision which became final on or about August 31, 2018. *Id.* Plaintiff states that she intends to file a complaint in this court regarding the MSPB appeal decision by September 26, 2018. *Id.* Plaintiff seeks to file this new matter and then request leave to consolidate some or all of the pending discrimination claims into her new case. *Id.*; *see also* Plaintiff's Reply to Def.'s Opp. to SMS ("Pl.'s Reply to SMS Opp.") [ECF No. 36] at 1 ¶ 1. She asks the court to refrain from rendering any decisions in this matter during her upcoming, yet undefined, filing and decision-making process. *See id.*

Defendant argues that a request for consolidation is premature, inappropriate, and unwarranted. Def.'s Opp. to SMS at 1 ¶ 2. Defendant correctly points out that this case has been pending for an extended amount of time, and that plaintiff has been granted repeated prior requests for extensions. *Id.* Defendant further posits that staying this case and/or combining issues and

claims at this juncture would be contrary to judicial economy and would be prejudicial to the defense. *Id.* at 1 ¶ 2; 2 ¶ 1. The Court agrees.

This case has now been pending for nearly two years, and it has reached its dispositive conclusion. The court has granted several prior requests for extensions on plaintiff's behalf, protracting the outcome of this case. Granting plaintiff's request to stay this case would unnecessarily delay proceedings. Standing alone, a stay would significantly delay the resolution of this matter; however, such delay would only be further compounded because plaintiff also intends to file a new complaint, then effect service of the new complaint, and then file motion(s) to consolidate, among other time-consuming procedures. Additionally, this would then necessitate a renewed round of briefing by all parties, which is prejudicial, and an inefficient use of the parties' time and expense.

To that end, the court notes that "[t]he decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the trial court." *Stewart v. O'Neill*, 225 F. Supp. 2d 16, 20 (D.D.C. 2002). "When determining whether to exercise such discretion, 'courts weigh considerations of convenience and economy against considerations of confusion and prejudice.' " *Am. Postal Workers*, 422 F. Supp. 2d at 245 (quoting *Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003)). The court finds that staying this case, for the purposes of a future unguaranteed consolidation, is contrary to judicial economy. Staying and potentially consolidating the issues and claims in this case, which have been long-ripe for disposition, would only serve to create profound confusion and inconvenience. Moreover, there is no logical reason to allow the consolidation of new claims with those that, as set forth above, have been determined to be barred by *res judicata*. Plaintiff provides no other legal justification for staying this matter. Therefore, plaintiff's motion to stay and hold this case in abeyance is denied.

**CONCLUSION**

For all of the foregoing reasons, the court has concluded that defendant is entitled to dismissal of all claims. Defendant's motion to dismiss is granted and this case is dismissed. A separate order accompanies this memorandum opinion.

_____/s/_____
RUDOLPH CONTRERAS
Date: September 27, 2018                     United States District Judge